We'll turn to the next argued case today, which is Stikas v. J.P. Morgan Chase. Good morning. Mr. DeYoung, go ahead. Thank you, Your Honor, very well. My name is Neil DeYoung. I'm representing the plaintiff appellant in this case. We believe the district court erred when it found that it did not have Article III authority to hear this breach of contract action between two parties to a mortgage note. The plaintiff appellant, Marion Stikas, was the borrower in the note. J.P. Morgan Chase was the lender, which foreclosed on the plaintiff's property located in the state of Connecticut. The claim breach concerns the note's requirement that Chase, as lender, could only charge fees that were not prohibited by law. And it is plaintiff's contention that she was charged $3,025 in attorney fees, which were illegally split between the law firm and Chase's outsourcer known as Fidelity National Foreclosure, Inc. There are four independent grounds for reversing the decision below, which dismiss the case specifically that the court found essentially on the merits as it acknowledged that the plaintiff had not paid any of the attorney fees. Of these four independent grounds, each of these grounds are sufficient for finding Article III standing here. First, on the issue of payment, this is no longer in dispute. Chase now concedes on appeal that as a matter of Connecticut foreclosure law, Chase's foreclosure on the plaintiff's property constituted payment of the attorney fees, because the attorney fees are expressly referenced in the judgment, separately stated in the judgment. What's the evidence that the $140 fee was included in the attorney's fees that were charged to Chase, or that the bank otherwise charged them then to your client? Interestingly, the retainer agreement with the law firm is not between Chase and the law firm. It's between Fidelity and the law firm. And in their agreement, they had a prearranged split. There wasn't any question that they were both going to be paid, because when you foreclose on a property, obviously monies are going to come from the sale of that property one way or the other. And their split was that Fidelity would get $140 upon referral, and that $140 had to be paid regardless of whether or not they performed any services. Attorney Bendit, the representative for the law firm, was deposed, and he acknowledged that, yes, that $140 is due at the outset, regardless of whether or not Fidelity performed any services for it. And on the attorney's end, in the agreement with Fidelity, it was also guaranteed 30% of its Fannie Mae allowable fee upon referral of the case. So the split was prearranged. Very similar to where attorneys have a referral arrangement, and the referring attorney gets a percentage of whatever is awarded from a case. The ethics there require that both attorneys are disclosed in the retainer agreement because it's a client that's paying both of them, and the same applies here. So payment is now conceded. That's on page, refer the court to page 35 and 36 of Appellee's brief, and that's one ground for Article III standing. The plaintiff's second ground for showing that it has a stake in this case is based on her claim for breach of contract. The court below acknowledged that a breach of contract, quote, in and of itself is a cognizable injury in fact, close quote, for purposes of Article III standing. That's at 562 of the appendix. We believe the court then committed reversible error when it looked at the facts and adjudicated on the merits and found that there wasn't a breach of contract. And that goes against the holding of this court in Carter v. Healthcourt Tech, which came down in 2016, which said that regardless of whether the breach of contract can be proven, that's not an Article III issue. As long as there's a valid breach of contract claim, the court has the power to hear the case. The plaintiff has a personal stake in the dispute. Regardless of whether or not a jury finds that there are any damages under Connecticut contract law, damages happen to be assumed. So even if she wasn't able to prove any actual damage, that's not essential under Connecticut contract law for a valid breach of contract claim. And therefore, she would have standing under that ground. A third ground for finding standing is the fact that she was charged the attorney fees that we claim were illegal. The court noted in its earlier decision and motion to dismiss at page 30, footnote 2 of the record, that the fact that the complaint alleges that the plaintiff, quote, incurred charges identified in the foreclosure action as attorney fees, close quote, was sufficient for standing at that stage of the proceedings here. Finally, the fourth ground, the most obvious ground, is that there was a judgment entered against the plaintiff appellant in this case. And last year's Second Circuit decision in Chevron versus Donziger held that an adverse judgment, which at the time was only impending, provides Article III power for the court to hear the case because there's an injury here. Even by the nature of . . . Does that mean that there has to be some causal relationship between the fee splitting and the foreclosure judgment? And isn't that where the district court found a problem with that theory? Well, it's . . . How is the foreclosure judgment fairly traceable to the fee splitting? Well, the attorney fees are in the foreclosure judgment. The court below looked at the invoices between the law firm and the bank, and that's the only documents which don't have warning signs that there's illegal fee splitting here. In the agreement between Fidelity and two of the subsidiaries to Chase, one is Washington Mutual and the other was EMC, which was Bear Stearns' mortgage arm. In the Fidelity agreement with EMC, that Chase subsidiary was able to negotiate an indemnity provision, which provided that, listen, if your fee arrangement with a law firm turns out to be, quote, an impermissible fee splitting arrangement or an impermissible referral fee arrangement, you're going to be liable. If the court had looked at the retainer agreement between Fidelity and the law firm, you also have that red flag because the law firm, after it entered into the retainer agreement with Fidelity, one month later had them modify the agreement and put in there, among other disclaimers, listen, we agree that this is not an illegal referral fee arrangement between us. But Chase never sought to collect, did it, by way of a deficiency judgment after the foreclosure? It did not. And because of that, under Connecticut foreclosure law, everything in the judgment is deemed satisfied. Had they obtained, and we pointed this out to the court down below, the argument down below, which is now, I guess, moot because they concede payment, was that we never paid the attorney fees. We did some internal bookkeeping after we took the property back, and we applied all the money to outstanding principal. That argument was contrary to Connecticut foreclosure law. Thank you. You've reserved some time. Mr. Bernard? May it please the court, James Bernard on behalf of the defendant J.P. Morgan Chase. I'm going to take up the four points that counsel raised and address them each in turn. First, with regard to the concession on appeal that the plaintiff, in fact, paid the judgment, I respectfully disagree. Pages 35 to 36 of our memo of law addresses two instances in which we agree that the plaintiff was correct about elements of foreclosure law under Connecticut law. And then it says, but even if, even if the $3,025 in attorney's fees were deemed paid, Sticus still would not have paid the cost because the $3,025 did not include the administrative charge. This was not a concession that there was payment. This was an argument about what would happen if the court were to find that there was payment. Our point was, Judge, as you noted, that the disputed administrative charge was not included in those fees. So there has been no concession of payment. Number two, counsel argues that there was a breach of contract. The district court judge addressed this alternative ground as well, in his opinion, and specifically found that there was not a breach of contract precisely because the fees, the challenged administrative charge, was not included in the attorney's fees. And there's no reason to disturb that finding on appeal. There simply was no breach because the fees that are disputed weren't included in the attorney's fees. Counsel cites this Court's opinion in Carter, which addresses the question of whether or not when you have a jurisdictional issue that is intertwined with an ultimate merits issue, how should the court resolve that? How should the district court handle that situation? And what this Court said is, is that in instances where the jurisdictional issue is intertwined with an underlying facts issue, a facts merits issue, and the plaintiff has a right to a jury trial on that ultimate issue, the court has to defer. But the critical point here is there was no disputed issue of fact. That's what summary judgment does, is it requires a plaintiff to flush out, are there any issues of fact? And, of course, district courts grant summary judgment motions all the time on ultimate merit issues. There's no violation of the principle in Carter here. The district court properly found that there was no disputed issue of fact. On appeal, excuse me, in the reply, and here at oral argument again today, counsel makes the argument that there was actually standing because the plaintiff was charged attorney's fees. That was the argument that we heard. The plaintiff was charged attorney's fees. I submit that that argument was really articulated for the first time in reply on appeal, so I want to address a couple of aspects of it, actually three aspects of it. First is I don't think that below the plaintiff's fairly raised that argument. It's certainly not how the district court viewed the record. The district court focused on this issue of the administrative charge, not the attorney's fees, so I think it's been waived. But putting aside waiver, it's wrong on the merits for two reasons. Number one, what the plaintiff seems to be arguing is that the mere fact, assuming that there was a referral fee payment or a split fee payment, the mere fact that that $140 was paid to Fidelity, that the entire $3,025 that was ultimately included in the judgment is somehow tainted. And I think that's wrong for a couple of reasons. Number one, the plaintiff doesn't present any argument, any law, any authority for why that should be the case. Critically, they cite to the green affidavit, the affidavit of Professor Bruce Green, paragraph 23. I urge the court to go back and take a look at it. I won't read it into the record now. It's really not what the green affidavit says. The green affidavit addresses another issue. In thinking about this issue in preparation for the argument, though, we found two cases which are not cited in our opposition brief that I'd like to bring to the court's attention that I think do address the issue. One is this court's opinion in a case called Miller. It's at 321 F3rd 292. It's an opinion by then Judge Sotomayor. And in Miller, this is the basic facts. The plaintiff in Miller brought an action under the Fair Debt Collection Protection Act and said that the law firm and the defendant law firm was trying to unlawfully collect attorney's fees. That law firm had entered into a referral agreement with an attorney referral network much like the Fidelity Network here. And as the court's opinion recites, the law firm was required by contract to pay 3% of any fees that it ultimately collected, attorney's fees that it collected, to the referral network. And the plaintiffs argued on appeal, well, that's prohibited by applicable law. The FDCPA specifically says a lawyer can't collect attorney's fees if they're prohibited by law, just like what we have here. This court rejected that argument. What then Judge Sotomayor said was there's nothing about collecting a facially reasonable amount of attorney's fees that makes it prohibited just because the law firm then intends to do something with those fees that are violation of attorney ethics rules or otherwise. There's another decision in the Eastern District of New York, Allstate Insurance Company v. Tenella, T-A-N-E-L-L-A. It's at 2012 Westlaw 718-8685. And in that case, Allstate brought a RICO claim against the law firm who had been collecting attorney's fees for no-fault insurance claims that they had been pursuing. And Allstate said, you know, this law firm, it's splitting fees with a non-lawyer because some of the members of the law firm are actually not lawyers. And therefore, this law firm is engaging in an ethical violation and we shouldn't have had to have paid those attorney's fees to them. We want them back. That's a RICO violation. And the district court rejected it. And specifically what the district court said at star page 4, there has never been a law or regulation exempting clients or adversaries from paying attorney's fees if attorneys fail to meet their obligations under the disciplinary rules. What the court went on to say is a disciplinary violation is a separate issue. So the authority that does exist does not support the theory. And last, I want to address another reason why the theory doesn't make any sense. And Judge Pauly, it gets to the question that you asked earlier. It's important to recall, as we recite in our brief, that a strict foreclosure proceeding is an in rem proceeding. The caption of the case may have been JPMorgan Chase v. Stiches, but it's an in rem proceeding. Ultimately, in particular here, because we have to remember, the plaintiff got a discharge in bankruptcy. JPMorgan could not have proceeded against her individually for the debt. It was limited to collecting the collateral and then applying the collateral. So ultimately what happens is, as Your Honor was asking, Judge, was that the judgment is obtained. It has the $3,025, but that's a judgment against the property, not against her individually. And then as Your Honor asked, when we get to law day, 30 days later, and actually the facts here are that what happened was JPMorgan had moved for summary judgment. And the plaintiff said, you know what? Rather than opposing summary judgment, I'll withdraw my answer. I'll agree to settle this case as long as you don't go against me in the law day proceeding where you're allowed to get a deficiency judgment. And JPMorgan agreed. It really had no choice because she'd obtained a discharge. And under those circumstances, for all those reasons, the fact that the $3,025 was included in the judgment against the property does not give the plaintiff standing when she never was going to incur any personal liability for that in this lawsuit against JPMorgan. I see that I've got about a minute left, but unless the panel has any questions, those are really, I think, the main reasons why the four arguments that plaintiff has raised in oral argument today should not disturb the district court's well-reasoned opinion granting a summary judgment. So I'll rest. Thank you. I'll point out that although it was an application on summary judgment, the court did grant dismissal on the ground of standing alone. Let me ask you, what's the remedy you seek here? Well, the remedy we seek are damages. We claim that there was a breach of contract. She was not required through the foreclosure to pay attorney fees that were prohibited by applicable law. Just describe to me what the decreto language would be for us, and what is it that you would have us instruct the district court to do? That the arguments raised are one for the merits, for the trier fact, that the court had Article III power to hear this case, that the plaintiff clearly had personal standing, regardless of whether or not it was personal or an in rem liability. The law is clear that as long as you're the owner of the property, you have standing in that regard. That is what I would ask. And then you proceed to a trial. And we proceed to a trial. And what are you seeking in that trial? We would be seeking damages that the Connecticut foreclosure law confirms that she paid, as a matter of law, the $3,025. And what would you achieve if you were vindicated, if you succeeded in full at trial? Well, at a minimum, under Connecticut contract law, there would be nominal damages to breach a contract. The issue of damages, whether it's the $140 versus the $3,025, I would save that for a decision on merits. I haven't addressed it. All right. So tell us what that decision on the merits would look like in your view, in your considered view or hopes, your expectations, your dream. My dream is that a jury would find that there was a breach of contract, that the bank shifted its costs onto the plaintiff because it didn't have to pay fidelity for any of its management services. And that, therefore, by shifting it over, its agent, Fidelity, engaged in an illegal fee-splitting arrangement. It got a referral fee from the plaintiff, $140, that it shouldn't have. We would ask for either actual damages, which could be either nominal or $140. You could ask for rest, which we do in our complaint, disgorgement of the entire $3,025. Professor Green cites to a New York State case in which the court found that the entirety of the legal fees in an action should be disgorged when you have an illegal fee-splitting arrangement. What's the best possible result that you would achieve? That the plaintiff is compensated with damages that the jury seems fit, whether that's nominal, $140, or the entirety of the attorney fees. Okay. I note that in our special appendix to our brief, we attach a Connecticut ethics opinion, which deals with this issue where fee-splitting occurs prior to the actual free-range fee-split that violates Connecticut ethics law. My time is up, but I will note that we also moved to reverse the judge on the dismissal motion, which it granted dismissal of an unjust enrichment claim. We specifically, throughout the complaint, indicated that this was an alternative to the breach of contract claim. And under Rule 80, we're entitled to make inconsistent theories. And that theory was only in the situation where the court found that the plaintiff could not assert a breach of contract claim. Thanks very much. Thank you. We reserve the decision. Thank you.